[No. 995-2. Division Two. April 15, 1974.]

GUNNAR BERSOS et al., *Appellants*, v. CAPE GEORGE COLONY CLUB, *Respondent.*

*Thomas C. McCarthy,* for appellants.

*Glenn Abraham,* for respondent.

PEARSON, C.J.—Tayler L. McCormick and Gunnar Bersos and wife brought this declaratory judgment action, seeking a determination of their right to build two houses on a single platted tract in Cape George Colony, a Jefferson County real estate development. The defendant club had rejected plaintiffs' building plans, basing its refusal on a policy forbidding subdivision of platted lots. This policy was based upon powers allegedly implied in the following restrictive covenants:

All purchasers, or owners of real property or interest therein in this plat must be acceptable to the Membership Committee of Cape George Colony, a non-profit corporation (hereafter referred to as "the corporation"), to

be formed by Cape George Land Co., Inc. or its nominees, and must become Members of Cape George Colony.

. . .

Before constructing a residence or building of any kind, it shall be mandatory for the builder or purchaser and property owner to first submit a plan of such construction to the corporation for approval by its Building Committee, and no work of any nature whatsoever shall be started on the residence or building before the plan is approved in writing by the corporation. All buildings shall be completed on the exterior, including paint, within six months after the starting date.

We reversed a summary judgment for the defendant on a prior appeal, holding *inter alia* that a resolution of factual issues as to the circumstances surrounding the acquisition of title by the plaintiffs would materially aid an appropriate interpretation of these covenants. *Bersos v. Cape George Colony Club*, 4 Wn. App. 663, 484 P.2d 485 (1971).

At trial upon remand, the defendant again prevailed. We find that the factual clarification fails to amplify the meaning of the covenants in such a way as to overcome the deficiencies we noted in the prior case. Accordingly, we reverse.

We need not reiterate those facts set forth in the prior opinion, but limit ourselves to a consideration of the factual context as developed at trial. Bersos contracted to purchase Tract B, a platted lot in Cape George Colony, from one Ford in August of 1968. Apparently at the time Ford had contracted to purchase this parcel in 1962, he and the defendant's predecessor had intended it to be, or regarded it as, one building lot. The record discloses no representations made to Bersos concerning this original intention or any building restrictions other than those represented by the above quoted covenants. Although the trial court found that Bersos never became a member of the defendant club (a prerequisite to building), this finding is unsupported and the defendant concedes that Bersos was indeed a member.

Some time prior to December 1968, Bersos orally agreed

to sell McCormick the north half of the tract. Both applied for and obtained building permits from the county. (It appears from the record that Tract B is one of the few parcels in the development, if not the only one, which can be subdivided and yet accord with county building regulations.)

Both plaintiffs submitted their building plans to the defendant in January 1969. On January 17, 1969, the building committee rejected the plans, on the stated grounds that "It was never intended that more than one home could be constructed on any lot . . ."

On February 1, 1969, Bersos and McCormick entered into a written contract for the sale to McCormick of the north half of Tract B. This contract was recorded. When the defendant's board of directors subsequently refused to overrule the building committee's determination, plaintiffs brought this action.

The trial court found that Bersos' predecessor, Ford, had agreed that Tract B was to be a single building site. The defendant concedes, however, that no representations beyond the covenants of record were made to Bersos concerning any building restrictions on Tract B. The court found further that the letter of January 17, 1969, put McCormick on actual notice of the defendant's policy with regard to the subdivision of platted lots. Accordingly, the defendant contends that McCormick is bound by such a restriction in any event, having acquired no enforceable interest until some weeks thereafter.

■ We begin an analysis of these facts mindful of the well-settled principles which favor the free use of land. Restrictive covenants will not be extended by implication beyond the clear meaning of the language used. *Bersos v. Cape George Colony Club, supra; Weld v. Bjork,* 75 Wn.2d 410, 451 P.2d 675 (1969); *Burton v. Douglas County,* 65 Wn.2d 619, 399 P.2d 68 (1965).

As we observed in our prior opinion, there is no clear provision in the written covenants which empowers the building committee to prohibit subdivision of a platted lot.

In light of the general rule we may not extend by implication the written covenant—that building plans must be approved—to encompass a right in the defendant to prohibit such subdivision.

This precise issue was before the court in *Levin v. Mountain Farms, Inc.*, 22 Conn. Supp. 14, 158 A.2d 493 (Super. Ct. 1959). In that case, the plaintiff sought a judgment declarative of his right to build on a subdivided portion of a platted lot. As in this case, there was a recorded restriction requiring submission of building plans to the developer's successor, and providing that no building should be erected until that authority "shall have approved, in writing, the plans, design and location of the building or buildings . . . " The Supreme Court of Connecticut rejected the contention that this restriction encompassed a power to prevent the erection of a residence on a subdivided lot:

> Other than evidenced by the map and the quoted restriction, there is no other general plan of development, and no statement of standards to be met by grantees or imposed by the grantor, its successors and assigns, in accomplishing the purposes of any plan. If it can be assumed that the purpose of the original developer was to make the land which it owned desirable and attractive for residences, *the instrument of conveyance should embody all the measures regarded as necessary to effectuate the result sought to be secured.* The restriction of the deed as made cannot be enlarged by implication or extended beyond the original intent. . . .
> . . . The covenant . . . cannot properly be extended by implication to give the defendant the right to forbid the subdivision of any of its lots previously sold, or to permit the defendant to prevent, by withholding its approval, the erection of any dwelling on a subdivided lot.

(Italics ours.) *Levin v. Mountain Farms, Inc.,* supra at 18-19, 158 A.2d 496.

█ In light of our own cases, this reasoning is equally applicable here. Furthermore, the facts as found by the trial court and otherwise revealed by the record demonstrate that Bersos purchased Tract B without notice of the

oral agreement between the defendant's predecessor and Ford, at the time the tract was platted, that it would constitute one building site. It is axiomatic that a purchaser without constructive or actual notice of a restriction on the use of land takes free of the restriction. *Pioneer Sand & Gravel Co. v. Seattle Constr. & Dry Dock Co.*, 102 Wash. 608, 173 P. 508 (1918). *See generally* 20 Am. Jur. 2d *Covenants, Conditions and Restrictions* § 304 *et seq.* (1965).

Given the strict rule of construction barring an inference of a restriction upon subdivision from the record covenants, and Bersos' lack of knowledge of any covenants not of record, oral or otherwise, he purchased Tract B free of any such restriction. It necessarily follows that McCormick likewise took the north half of the tract free of such restrictions, depite the fact that he was arguably on notice of the original intent of the covenantors at the time he purchased his interest. *Hawkes v. Hoffman,* 56 Wash. 120, 105 P. 156 (1909); *Rehm v. Reilly,* 161 Wash. 418, 297 P. 147, 74 A.L.R. 350 (1931); *see* 20 Am. Jur. 2d *Covenants, Conditions and Restrictions* § 306 (1965).

 The recorded covenants require that owners of interests in real property in the subject plat become members of the club, and that their building plans be approved by the building committee before construction can commence. As to these matters, the defendant must apply reasonable standards, without regard to its policy against subdivision.

Reversed and remanded for proceedings consistent with this opinion.

ARMSTRONG and PETRIE, JJ., concur.