CHARLOTTE CONSOLIDATED CONSTRUCTION COMPANY ET AL. V. MRS.
E. L. COBB (MRS. F. G. COBB), ET AL.

(Filed 6 June, 1928.)

**1. Deeds and Conveyances—Construction and Operation—Restrictions.**

A restricted covenant in a deed to lands divided into lots requiring that
the lots conveyed "shall be used for residential purposes only, and there
shall not at any time be more than one residence or dwelling-house"
thereon, evidences the intent of the grantor to exclude all buildings thereon
other than dwelling-houses, but does not exclude apartment houses so
arranged that several families may reside separately in the various apart-
ments in the same building and under the same roof.

**2. Same—General Rules of Construing Restrictions.**

In construing restrictive covenants in a deed as to the character of
the buildings that may be erected on a lot sold, with others, in the de-
velopment of an area of lands, the courts will incline to such reasonable
construction as will resolve a doubt in favor of the free and untrammeled
use of the property for lawful purposes.

APPEAL by plaintiffs from *Harding, J.,* at March Special Term, 1928,
of MECKLENBURG.

Civil action to enjoin the erection of an apartment house on defend-
ant's lot as being in violation of restrictive covenants contained in deeds
conveying said property.

The material allegations of the complaint, so far as essential to a
proper understanding of the legal questions involved, may be abridged
and stated as follows:

1. In 1920, the Charlotte Consolidated Construction Company, being
the owner of an undeveloped tract of land in that section of the city
of Charlotte known as "Dilworth," decided to divide the same into lots
and blocks of various sizes and develop it as a high-class residential dis-
trict.

2. To this end, a map was prepared and recorded, showing the general
plan and scheme, and all the lots were sold with certain restrictions
relative to their use and occupancy, chief among which is the following:

"The lot of land hereby conveyed shall be used for residential purposes
only, and not otherwise, and shall be owned, occupied and used only by
members of the white race (domestic servants in the employ of said
occupants excepted) and there shall not at any time be more than one
residence or dwelling-house on said lot (servants' house excepted)."

3. Said restrictions were inserted in all the deeds conveying the dif-
ferent lots shown upon the map, as covenants running with the land,
for the mutual benefit and protection of the respective owners thereof.

4. The corporate plaintiff is not now the owner of any of the lots
shown upon said map, but does own property surrounding and in the

same neighborhood, while the individual plaintiffs are owners of lots appearing thereon, two of them adjoining the defendant's lot.

5. The defendant, Mrs. E. L. Cobb, is the owner of one of the lots shown upon said map and proposes to erect thereon, as plaintiffs allege, "a large flat or apartment house of a severe oblong shape, to be used for the separate accommodation of four different families or family groups, said buildings being arranged into four distinct separate places of residence, or apartments, each of said apartments having its own separate kitchen and other quarters, each being entirely separate from the other, each having its own separate front porch and each having its own private inside entrance with no means of communication one with another, except through such inside main entrance to each."

6. None of the plaintiffs, nor any of the owners of lots shown upon the aforesaid map, has consented for the defendant to build such an apartment house on her property, nor has any of the plaintiffs or any of said lot owners waived the right to protest against a violation of any of said restrictive covenants.

7. The erection of said apartment house, plaintiffs allege, will result in irreparable injury to their property; wherefore, they ask that its construction be enjoined.

A demurrer was interposed by the defendants upon two grounds:

First, because no cause of action is stated by the individual plaintiffs, it appearing that the deed of the Construction Company to the lot in question, attached to the complaint, contains the following reservation:

"Provided, however, that any of the conditions and restrictions herein contained may be at any time and in any manner changed by and with the mutual and written consent of the parties of the first part, or its successors, and the owner or owners, for the time being, of the lot of land hereby conveyed."

Second, for that the complaint does not state facts sufficient to constitute a cause of action, either against the defendants, or in favor of any of the plaintiffs.

From a judgment sustaining the demurrer, the plaintiffs appeal, assigning error.

*Taliaferro & Clarkson for plaintiffs.*
*Whitlock, Dockery & Shaw and T. A. Adams for defendant.*

STACY, C. J., after stating the case: The principal question for decision is whether a building restriction in a deed which provides that the lot of land thereby conveyed "shall be used for residential purposes only . . . and there shall not at any time be more than one residence or dwelling-house on said lot (servants' house excepted)," is

violated by the erection on, said premises of an apartment house containing four apartments, each designed for the separate accommodation of a family or family group.

The plaintiffs assert the affirmative of this question and rely upon *Bailey v. Jackson,* 191 N. C., 61, 131 S. E., 567, where the covenant, among other things, prohibited the building of more than "one residence" on a lot. The defendants assert the negative and cite as authority *Delaney v. VanNess,* 193 N. C., 721, 138 S. E., 28, where an apartment house was held not to violate a covenant against the erection of "any structure except a dwelling-house"; because, it was said, an apartment house, used for residential purposes, is a dwelling-house.

Conceding, then, that an apartment house may be more than one residence, is it more than "one residence or dwelling-house" when used for residential purposes only?

The trial court was of opinion, and accordingly held, that the restriction in question did not prohibit the erection of an apartment house such as the defendant proposes to build. In this, we are disposed to concur.

An apartment house, used for residential purposes only, has been held to be a dwelling-house, hence if the expression "dwelling-house" be changed to one of its equivalents, "apartment house," the restriction would then read: there shall not at any time be more than one residence or apartment house on said lot (servants' house excepted). If this were its language, and such we apprehend is one of its permissible meanings, the correctness of his Honor's ruling would hardly be subject to debate.

Residence is a more restricted term than dwelling-house, and it would seem to be a refinement of construction to say that the two words, as here employed, were used synonymously, *idem re et sensu.* Rather it would appear that the second, which has the broader signification, was intended as an enlargement over the first. *Hutchison v. Ulrich,* 145 Ill., 336, 34 N. E., 556, 21 L. R. A., 391; 18 C. J., 391. If the parties had wished to prohibit the building of an apartment house on the defendant's lot, they could easily have said so in language clearly importing such intent.

It is the position of a number of courts that, in the absence of clear and unequivocal expressions, restrictive covenants ought not to be expanded, but rather buckled in against those claiming their benefit and in favor of free and unrestricted use of property. 27 R. C. L., 756, *et seq.* "It is a well settled rule that, in construing deeds and instruments containing restrictions and prohibitions as to the use of property conveyed, all doubts should be resolved in favor of the free use thereof for lawful purposes in the hands of the owners of the fee." *Hunt v. Held,* 90 Ohio, St., 280, 107 N. E., 765, L. R. A., 1915 D., 543.

We think the restriction in question is aimed more at the character of the building with reference to the purposes for which it is to be used, than at its architectural design. A building occupied by four families is no less a dwelling-house than one occupied by a single family. The house is not necessarily doubled, trebled or quadrupled simply because it is occupied by two, three or four families, instead of one.

Speaking to a similar question in *McMurtry v. Phillips Invest. Co.,* 103 Ky., 308, 45 S. W., 96, 40 L. R. A., 489, *Hazelrigg, J.,* delivering the opinion of the Court, said: "It is shown, indeed admitted, that these different apartments or flats are places for persons to reside in, but it is contended that the language of the restriction conveys the idea of a single residence for a single family or at any rate excludes the idea of a number of residences under the same roof or in the same house. We think, however, that to give the language used, this meaning would be to extend its scope beyond the expressed intention of the parties. The purposes for which the house is to be erected on the court were to be used were 'residence purposes only.' And as the house in controversy is to be constructed for such purpose only and is not to be used for any other purpose, we do not think its construction is at all prohibited by this restriction clause. If the intention had been to permit the erection of only segregated private residences, the instrument would doubtless have so provided."

The building which the defendant proposes to erect is a single structure, intended for residential purposes only. This is permitted by the restriction which is directed against the erection on the *locus in quo* of more than one residence or dwelling-house. That it is intended to accommodate a number of families does not *ipso facto* bring it within what is forbidden. *Huntington v. Dennis, post,* 759.

Holding, as we do, that the complaint does not state facts sufficient to constitute a cause of action, it is needless to consider the other ground upon which the demurrer is based.

Affirmed.